The defendant was indicted and convicted for escape in the first degree. Alabama Code 1975, Section 13A-10-31. Sentence was life imprisonment. Five issues are presented on appeal.
 I
The defendant filed a motion for a mental examination pursuant to Section 15-16-21, alleging that he was presently incompetent and that he was insane at the time of the crime. After a hearing, this motion was denied. The trial judge found that "reasonable cause" had not been shown to doubt the defendant's sanity or competency. The defendant argues that sufficient evidence was presented to create a reasonable doubt of his competency and therefore further psychiatric examination should have been ordered.
At the hearing on the motion, the defendant called William Thornton, the Cullman County coordinator of the North Alabama Mental Health Center. Approximately one week before the hearing, Thornton evaluated the defendant. He testified that the defendant exhibited "psychotic like behavior" *Page 1366 
involving hallucinations and a poor understanding of reality. He recommended that "it would be advisable that he receives further, more indepth psychiatric evaluation." Thornton stated that the defendant's participation with his attorney and in his defense "would be limited" and that he would have "some difficulty" in working with his attorneys and understanding what was going on.
Thornton gave the defendant a personality test and the defendant was able to read, understand and answer the questions. Thornton found "sufficient evidence there to suggest that his responses were truly of a disturbed person." He stated that the 27-year old defendant's I.Q. was equivalent to a sixth or seventh grade level.
Wynell Girard, the defendant's mother, testified to the difficulties the defendant had in elementary school and to the difficulties he encountered in dealing with people; that he attempted suicide in 1978; that he saw a psychiatrist and had counseling in 1969 and 1970; and that she had been advised that he had schizophrenia and brain damage.
Michael Penwell was an inmate in the county jail who was in the cell next to the defendant's. He testified that sometimes the defendant wouldn't talk to him; that he would carry on a conversation with himself. He also testified that he thought the defendant realized what he had done.
Lynn Miller was also an inmate in the county jail with a cell next to the defendant's. He heard the defendant talking to himself. He testified, as had Thornton and Penwell, that the defendant said that the police were out to get him.
Lieutenant Brian Buegler of the Cullman County Sheriff's Office was the county jailer. He testified that on September 14, 1980, the defendant attempted suicide by trying to hang himself in the jail. This was shortly after the defendant's initial arrest and at this time he was intoxicated.
"`Where the trial court finds that there are no reasonable grounds to doubt the accused's sanity, the standard of appellate review is whether the trial judge abused his discretion.'" Miles v. State, 408 So.2d 158, 162 (Ala.Cr.App. 1981), cert. denied, 408 So.2d 163 (Ala. 1982). "The denial of a request for a sanity investigation is an abuse of discretion if arbitrary or if unsupported by evidence of human reasoning."Miles, 408 So.2d at 162. Here, as in Miles, there was never any specific testimony as to whether or not the defendant was competent or incompetent to stand trial. Thornton's conclusion was that further psychiatric evaluation would be advisable. Consequently, the defendant failed to carry the burden of persuasion he has on a hearing of a motion for a competency investigation.
We find no clear abuse of the discretion of the trial judge. A review of the record reveals no facts which create a reasonable and bona fide doubt as to the defendant's mental competency to stand trial. Seibold v. State, 287 Ala. 549,253 So.2d 302 (1970); Seagroves v. State, 279 Ala. 621,189 So.2d 137 (1966) (defendant failed a couple of grades in school);Colley v. State, 405 So.2d 374 (Ala.Cr.App. 1979), reversed on other grounds, 405 So.2d 391 (Ala. 1981); Wilson v. State,371 So.2d 932 (Ala.Cr.App. 1978), affirmed, 371 So.2d 943 (Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3042,65 L.Ed.2d 1133 (1980); Atwell v. State, 354 So.2d 30
(Ala.Cr.App. 1977), cert. denied, Ex parte Atwell, 354 So.2d 39
(Ala. 1978).
Proof of the incompetency of an accused to stand trial involves more than simply a mere showing that the accused has mental problems or psychological difficulties. The competence of an accused to stand trial is determined by whether at the time of the trial he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceeding against him. Dusky v. UnitedStates, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960);Atwell, 354 So.2d at 35. The trial judge is not bound by the conclusion and recommendations of an expert as to the competency of the accused. Miles, 408 So.2d at 162. *Page 1367 
Even viewing the evidence in a light most favorable to the defendant we can only reach the conclusion that there was no abuse of discretion.
 "We cannot say under our past cases that the appellant's showing was so compelling that the trial court abused its discretion in denying this petition (for mental examination). The trial court held a hearing, listened to the witness and made a decision. It might have decided either way on the question of whether the hearing produced any real evidence of legal insanity or legal incompetence. Its decision was not arbitrary or unsupported by reason or fact. We conclude that the trial court did not abuse its discretion." Pace v. State, 284 Ala. 585, 587-8, 226 So.2d 645 (1969).
 II
The defendant argues that he was entitled to a "qualified psychiatrist at state expense."
The fact that an accused is indigent does not entitle him to a free psychiatric examination. Tillis v. State, 292 Ala. 521,525, 296 So.2d 892 (1974); Nelson v. State, 405 So.2d 392, 394
(Ala.Cr.App. 1980), reversed on other grounds, 405 So.2d 401
(Ala. 1981). The defendant recognizes this authority but contends that the Alabama Legislature authorized the hiring of an expert by counsel in defending an indigent. Alabama Code 1975, Section 15-12-21 (d) provides that "(c)ounsel (appointed to defend an indigent defendant) shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense to be approved in advance by the trial court, but in no individual case shall such expenses exceed one-half of the allowable attorney fees provided in this section" (Emphasis added.) The defendant contends that Thornton's testimony that he needed a psychiatrist, coupled with the above statutory authorization, operated to deny the defendant his constitutional right of due process.
Section 15-12-21 clearly authorizes reimbursement for any expense reasonably incurred in the defense of an indigent by a court appointed attorney if such expense is approved in advance by the trial court. This would allow a maximum of $500.00 for expert testimony, or, as in this case, psychiatric examination. However, such expenses must be approved by the trial court. This issue is determined by those same considerations which govern Issue I. That is, were there any facts before the trial judge which would create a reasonable and bona fide doubt as to the mental competency of the accused to stand trial. A defendant has no right to receive a mental examination whenever he requests one and, absent such right, a motion for psychiatric examination to determine the competency or sanity of an accused is directed to the sound discretion of the trial judge, who must act as a screening agent for such. Pace,284 Ala. at 587, 226 So.2d 645; Colley, 405 So.2d at 380. "Only when the evidence presents a sufficient doubt as to the defendant's sanity is an investigation into his sanity required." Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.), cert. denied, Ex parte Beauregard, 372 So.2d 44 (Ala. 1979);Gales v. State, 338 So.2d 436, 438 (Ala.Cr.App.), cert. denied,338 So.2d 438 (Ala. 1976).
Common sense, as well as sound legal authority, dictates that the trial judge not grant a psychiatric examination at state expense unless there is some reason to believe the accused was incompetent or insane. "(E)qual protection does not require that the appellant be free to futilely waste the money of the Alabama taxpayers." Gales, 338 So.2d at 438.
 III
The trial judge properly refused to allow witness Thornton to testify as an expert to the results of the Minnesota Multiphasic Personality Inventory test he administered to the defendant. The judge specifically found Thornton "not qualified as an expert from his educational training or experience to determine from any test" whether the defendant was sane or insane.
Thornton had an undergraduate degree in psychology and sixty hours of graduate *Page 1368 
training in behavior modification with no degree. He had some practical experience in working with psychologists and had worked as a "clinical technician, administering a variety of different test procedures." When specifically asked by the trial judge if he was qualified to determine sanity or insanity from the testing procedures, Thornton replied that since the particular procedures were approved by a clinical psychologist he did not have the authority to make such a determination: "Typically, the particular procedures are these particular procedures, they are approved by the clinical psychologist and therefore I do not feel I do not have the — I do not myself, without his approval, make such determination."
The general rule is that only persons licensed to practice medicine as a profession can testify as experts on the question of insanity. Odom v. State, 174 Ala. 4, 7, 56 So. 913 (1911) (Witness could not testify as an expert where his only qualifications were that "he had handled a great many insane persons, had observed and studied them in the course of their transfer by him from Mobile to Tuscaloosa and other points * * * * and had `lately read medical works on the subject.'");Carroll v. State, 370 So.2d 749, 761 (Ala.Cr.App.), cert. denied, 370 So.2d 761 (Ala. 1979) (A psychiatric social worker who has a "great deal of informal contact" with accused in hospital not qualified as expert to state mental condition of accused at the time of the crime.) "The mere fact that a lay witness has handled a great many insane persons, had observed and studied them and had read medical works on the subject, does not automatically qualify him to testify as an expert on insanity." Carroll, 370 So.2d at 760-61.
"Whether the qualification of the witness is sufficient is a question to be determined by the trial court, and the very nature of the test requires that its determination in particular cases be left to the sound discretion of the trial court, and which will not be revised on appeal, except for palpable abuse." Jones v. State, 181 Ala. 63, 80, 61 So. 434
(1913); C. Gamble, McElroy's Alabama Evidence, Section 127.01 (5) (3rd ed. 1977).
Had Thornton been a psychologist properly qualified on the nature and extent of his knowledge, he should have been allowed to testify as an expert as to the results of the psychological test he administered to the defendant. Anno., 78 A.L.R.2d 919 (1961); Alabama Code 1975, Section 12-21-160. However, Thornton was not a psychologist and was not shown to have any equivalent training, experience or skill. Although qualified to administer the test, he candidly admitted that he was not qualified in its interpretation regarding sanity or insanity. Because of this admission and because the witness was not shown to have such knowledge, skill, experience or training as would justify a jury in reasonably relying upon his interpretation of the test results, we find no abuse of the trial judge's discretion in this regard.
 IV
The defendant contends that the trial judge erred in refusing to grant his motion for discovery. Specifically, it is argued that, if the defendant had known that the State was going to call witness Junior Kilgore to testify, he could have subpoenaed witnesses from Kilgore's community to impeach him and, if the defendant had been given the criminal records of witness Kilgore, any convictions could also have been used for impeachment. A reading of the motion shows that the defendant was on a "fishing expedition" with a "scatter gun" and for this reason the motion was properly denied. Perry v. State,371 So.2d 969, 970 (Ala.Cr.App.), cert. denied, 371 So.2d 971 (Ala. 1979).
There is no constitutional right to discovery and Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), did not create one. Weatherford v. Bursey, 429 U.S. 545,97 S.Ct. 837, 51 L.Ed.2d 30 (1977). While undisclosed evidence which creates a reasonable doubt that did not otherwise exist may deprive the defendant of a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment, *Page 1369 United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392,49 L.Ed.2d 342 (1976), there must be some showing that such exculpatory and influential evidence actually exists before such a constitutional violation can be found. Here, the defendant only alleges that Kilgore "may have had" other convictions than the one brought out by defense counsel on cross examination. It is also argued that "other information favorable to Bailey couldhave been in the State's files and was not provided to him." Such speculation and conjecture will not support a finding of the violation of the right of the accused to a fair trial.Perry v. State, 371 So.2d 969 (Ala.Cr.App.), cert. denied, Exparte Perry, 371 So.2d 971 (Ala. 1979).
Brady held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. This constitutional standard of materiality presupposes the actual existence of some evidence. Because the motion for discovery was very broad in scope, seeking virtually the prosecution's entire case, and because there has been no showing that the evidence requested actually exists, the motion was properly denied.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.