715 So.2d 866 (1997)
Obie RUSSELL, Jr.
v.
STATE.
CR-96-0370.
Court of Criminal Appeals of Alabama.
October 31, 1997.
Rehearing Denied December 19, 1997.
Certiorari Denied May 15, 1998.
*868 Mark Allen Treadwell III, Dadeville, for Appellant.
Bill Pryor, atty. gen., and James B. Prude, asst. atty. gen., for appellee.
Alabama Supreme Court 1970583.
COBB, Judge.
Obie Russell, Jr., was convicted of assault in the second degree, a violation of § 13A-6-21, Ala.Code 1975, in connection with an attack on Kyra Wycoff on May 15, 1996, in which a knife was used as the weapon. The trial court sentenced Russell to 15 years in the penitentiary.
Russell argues that the trial court erred in denying his motion, filed pursuant to Rule 11.2, Ala. R.Crim. P., seeking a mental evaluation. Russell's defense counsel requested the mental evaluation to determine both whether Russell was capable of appreciating the nature and quality or wrongfulness of his actions at the time of the offense and whether he was competent to stand trial. The motion alleged that Russell exhibited deviant behavior while he was incarcerated. Russell entered an initial plea of not guilty; he later amended his plea to include a plea of not guilty by reason of severe mental disease or defect. Following a hearing in which the defense called one witness, the trial court denied Russell's motion. Russell argues that the trial court abused its discretion in denying his motion. We agree.
If the trial court determines that reasonable grounds exist for a mental examination, the trial court shall appoint a psychiatrist or psychologist to examine the defendant and to report regarding the defendant's mental condition or order that such an examination be conducted by a psychiatrist or psychologist appointed by the commissioner of the Department of Mental Health and Mental Retardation. Rule 11.3(a), Ala. R.Crim. P.
Mental evaluations are also governed by statute.
"Ala.Code 1975, § 15-16-21, provides in pertinent part:
"`If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity....'
"This section authorizes the trial court to make a preliminary determination (without the aid of a jury) as to whether there are reasonable grounds to doubt the defendant's competency to stand trial. Ex parte LaFlore, 445 So.2d 932, 934 (Ala.1983); Richardson v. State, 354 So.2d 1193, 1196 (Ala.Cr.App.1978). The trial court is, thus, the `screening agent' for mental examination requests. Livingston v. State, 419 So.2d 270, 274 (Ala.Cr.App.1982)."
Reese v. State, 549 So.2d 148, 150 (Ala.Cr. App.1989), overruled on other grounds, Huntley v. State, 627 So.2d 1013 (Ala.1992). "It is left to the discretion of the trial court as to whether there is a reasonable or bona fide doubt as to sanity and, thus, whether a further examination is required." Waldrop v. State, 459 So.2d 953, 955 (Ala.Cr.App.1983), aff'd, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). The standard of review is whether the trial court abused its discretion by not requiring an evaluation of Russell's competency to stand trial. See Baker v. State, 599 So.2d 60, 62 (Ala.Cr.App.1991).
A trial of an accused who is incompetent violates due process. Wagner v. State, 489 So.2d 623, 628 (Ala.Cr.App.1985); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). Rule 11.1, Ala. R.Crim. P., states:
"A defendant is mentally incompetent to stand trial or to be sentenced for an offense if that defendant lacks sufficient present ability to assist in his or her defense by consulting with counsel with a *869 reasonable degree of rational understanding of the facts and the legal proceedings against the defendant."
The trial court makes the ultimate determination of a defendant's competency pursuant to the following standard:
"The test for determining competency to stand trial is whether the defendant `has sufficient present ability to consult with his lawyer with a reasonable degree of rational understandingand whether he has a rational as well as factual understanding of the proceedings against him.' Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)."
Anderson v. State, 510 So.2d 578, 579 (Ala.Cr.App.1987). "This determination [of competency to stand trial] should be left to the discretion of the trial court." Baker v. City of Huntsville, 516 So.2d 927, 931 (Ala. Cr.App.1987).
Additionally, an indigent defendant is constitutionally entitled to a psychological expert provided at the State's expense where the defendant demonstrates to the trial court that his or her sanity at the time of the offense could be a significant factor at trial. Ake v. Oklahoma, 470 U.S. 68, 86, 105 S.Ct. 1087, 1097-98, 84 L.Ed.2d 53 (1985). Where an evaluation by a psychologist or psychiatrist is constitutionally required, such an expert may be appointed under Rule 11.3(a), Ala. R.Crim. P.; Isom v. State, 488 So.2d 12, 13 (Ala.Cr.App.1986). Russell sought a mental examination to evaluate both his competency to stand trial and his mental state at the time of the offense.
At the hearing on his motion requesting a mental evaluation, Russell called Dr. Barbara Keown, an employee at the East Alabama Mental Health Center and a counselor at the Nan Kelley Counseling Center. Dr. Keown testified as an expert in the fields of psychology and counseling. Dr. Keown testified that she had reviewed Russell's records from the Nan Kelley Counseling Center. She testified that Russell's records reflected that he had been diagnosed as suffering from chronic paranoid schizophrenia. Dr. Keown also testified that Russell had sought treatment at the counseling center on four occasions during the three months before the attack of Wycoff. The records indicated that, on these visits to the counseling center, Russell sought treatment for auditory and visual hallucinations and behavioral problems. Russell, who had recently been released from prison, also told the staff at the counseling center that he was having difficulty adjusting to life outside of prison. Dr. Keown testified that Russell was given prescriptions for Prolixin Decanoate, an antipsychotic drug. She testified that his medication was discontinued shortly before the attack on Wycoff because Russell had taken an overdose. Dr. Keown testified that she had personally seen Russell on only one occasion before the hearing and that she was unable to form an opinion as to the extent of his mental illness from that encounter. Dr. Keown testified that, in her opinion, further evaluation would be needed in order to make an informed determination of whether Russell was competent to stand trial and whether he appreciated the nature and quality or wrongfulness of his actions when he attacked Wycoff.
The State, in its cross-examination of Dr. Keown, emphasized that Russell had previously been determined to be competent to stand trial in 1988 and again in 1989, despite his mental illness. The State presented no evidence at the hearing to contradict Dr. Keown's testimony.
It is evident from the following portion of the record of the hearing that the trial court misconstrued Russell's burden of proof on the issue of whether he was entitled to a mental evaluation to determine his competency to stand trial:
"THE COURT: Do you have access to all of the records wherever you work and that kind of stuff?
"THE WITNESS [Dr. Keown]: We have records from his contact with our facility.
"THE COURT: Have you reviewed those?
"THE WITNESS: Yes, I have.
"THE COURT: Are you competent to evaluate the results of those contacts?
"THE WITNESS: I have reviewed the records.

*870 "THE COURT: Well, the bottom line is simply this: What I want to know is whether or not you can express an opinion based on reasonable medical certainty, based on your personal knowledge, or review of the records that you have access to and that you looked at, that you would normally rely on if you were dealing with this personis that right?

"A: Yes.

"Q: whether or not the defendant lacks sufficient present ability to assist in his or her defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against the defendant? Are you competent to make that opinion? Express an opinion as to that issue?
"THE WITNESS: I am not sure about that.
"THE COURT: You do not think you can?
"THE WITNESS: I don't I have not seen enough of him to know whether he is competent to do that. Based on reviewing... the records, I would guess there may be a problem there.

"THE COURT: I don't want a guess. I want an opinion. You came up here to testify and give your opinion. I am going to listen to your opinion. If you do not have an opinion, you can just say so. I don't want a guess. Do you have an opinion?
"THE WITNESS: The only opinion I can give you is when I brought him into my office to sign releases to talk with Mr. Treadwell [defense counsel], he seemed to have difficulty understanding the purposes of the releases and what kind of information, you know, I would be releasing to his attorney.

"THE COURT: That is not my question. The question is: Can you express an opinion as to the question, which is, does the defendant lack sufficient present ability to assist in his defense by consulting with counsel with a reasonable degree of rational understanding of the facts and legal proceedings against him? Are you prepared to express an opinion on that?

"THE WITNESS: No, I am not.

"THE COURT: All right. Are you prepared to express an opinion as to whether or not the defendant, as a result of severe mental disease or defect, was able to appreciate the nature and quality or wrongfulness of his acts at the time of the alleged commission of the offense?

"THE WITNESS: No, I am not.

(S.R.12-14) (emphasis added.)
Russell's burden, for purposes of his motion seeking a mental evaluation paid for by the State, was merely to establish a reasonable doubt as to his competency to stand trial or to establish that his sanity at the time of the offense would be a significant factor at trial. The trial court apparently expected Dr. Keown to testify as to the ultimate issue of Russell's sanity at the time of the offense and his competency to stand trial. The trial court then ruled, not on Russell's request for a mental evaluation, but on the ultimate issue. This was reversible error.
In Ex parte Gordon, 556 So.2d 363 (Ala.1988), the Alabama Supreme Court held that the defendant had raised sufficient reasonable doubt as to her competence to stand trial where three of her defense attorneys testified at a hearing on her motion requesting a mental examination and expressed their opinions that there was just cause to warrant further mental evaluation of the defendant in order to determine her competency. In the present case, the evidence is even more compelling. Dr. Keown, a mental health expert, testified that Russell was diagnosed as suffering from paranoid schizophrenia; that he had sought treatment for mental illness and had been prescribed antipsychotic medication in the months immediately preceding the attack on Wycoff; that he had been taken off the medication because of an overdose shortly before the attack; and that further mental evaluation of Russell would be necessary to determine his competence to stand trial and his sanity at the time of the offense.
Although the trial court is in a better position than a reviewing court to rule on a defendant's request for a mental evaluation by virtue of its ability to hear and see the evidence and to observe the defendantthe *871 record of the hearing on Russell's motion for a mental evaluation clearly raises at least a reasonable doubt as to his competence to stand trial. Additionally, we hold that Russell made a sufficient showing, pursuant to Ake v. Oklahoma, supra, that his mental state at the time of the offense would be a significant factor in his trial. In light of Dr. Keown's testimony at the hearing, we hold that further inquiry into the issues of Russell's competence to stand trial and his mental state at the time of the offense was warranted. The trial court abused its discretion in denying Russell's motion for a mental evaluation.
The dissenting opinion cites Bailey v. State, 421 So.2d 1364 (Ala.Cr.App.1982), as support for its argument that the trial court did not abuse its discretion in denying Russell's motion for a mental examination on the ground that he had not made the necessary showing that there were reasonable grounds to believe that he was incompetent. We note that Bailey was decided before, and without the benefit of, the United State's Supreme court's decision in Ake v. Oklahoma, supra, which held that an accused is entitled to a mental evaluation if it can be shown that the accused's mental state at the time of the offense is going to be a significant factor at trial.
Moreover, the facts surrounding Bailey and the facts in the present case are distinguishable. A mental health official testified that Bailey exhibited "psychotic-like behavior" in an evaluation conducted one week before the hearing on his motion for a mental examination. Other witnesses testified to the same effect.
Despite the recommendation of the witness who performed the mental evaluation, the Bailey court ruled that further evaluation was unnecessary and that he was competent to stand trial. In the present case, Russell, who was indigent, relied largely on medical records showing that he had been diagnosed with schizophrenia for several years and had exhibited psychotic behavior immediately before the commission of the offense for which he was on trial. This evidence, combined with Dr. Keown's assessment, however equivocal, was sufficient to entitle Russell to the evaluation he sought. We are aware that the trial court is not bound by the recommendations of experts as to the competency of the accused. Miles v. State, 408 So.2d 158, 162 (Ala.Cr.App.1981), cert. denied, 408 So.2d 163 (Ala.1982) (relied upon in Bailey.) However, we hold that, in light of the evidence, Russell presented sufficient proof both that there existed a reasonable doubt as to his competency and that his sanity at the time of the offense was to be a significant factor at trial.
For the above-stated reasons, the judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur except BROWN, J., who dissents with opinion.
BROWN, Judge, dissenting.
I must respectfully dissent from the majority's holding that the trial court abused its discretion in denying the appellant's motion requesting a mental evaluation. I disagree because, in my opinion, the appellant failed to show that a reasonable doubt existed as to his competency to stand trial and failed to make a preliminary showing under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), as to his sanity at the time of the offense.
Dr. Barbara Keown, an employee at the East Alabama Mental Health Center and a counselor at the Nan Kelley Counseling Center, was the appellant's only witness at the hearing on his motion. Dr. Keown had not evaluated the appellant in person; instead, she merely reviewed his medical records from the Nan Kelley Counseling Center. She testified that the appellant had been diagnosed as suffering from chronic paranoid schizophrenia. The records further indicated that he had sought treatment for hallucinations and behavioral problems and had expressed difficulty adjusting to life outside of prison.
Dr. Keown was unable to express an opinion whether the appellant would have appreciated the wrongfulness of his conduct when *872 he committed the assault. She further stated that she was unable to make an informed decision as to whether the appellant had sufficient present mental ability to consult with his attorney with a reasonable degree of rational understanding and whether he had a rational understanding of the proceedings against him. Upon further questioning, Dr. Keown responded that perhaps "[i]f I had more contact with him, I would be able to better give an opinion about these things." (S.R.15.)
In Bailey v. State, 421 So.2d 1364 (Ala.Cr. App.1982),[1] this Court found that the trial court had not abused its discretion in denying Bailey's motion requesting a mental evaluation. In so finding, this Court noted:
"[T]here was never any specific testimony as to whether or not the defendant was competent or incompetent to stand trial. [The witness's] conclusion was that further psychiatric evaluation would be advisable. Consequently, the defendant failed to carry the burden of persuasion he has on a hearing of a motion for a competency investigation."
Bailey, 421 So.2d at 1366.
This Court further stated:
"Proof of the incompetency of an accused to stand trial involves more than simply a mere showing that the accused has mental problems or psychological difficulties. The competence of an accused to stand trial is determined by whether at the time of the trial he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceeding against him."
Id.
Here, as was the case in Bailey, there was no testimony indicating that the appellant could not assist in his defense or that he was unable to understand the charge against him. All Dr. Keown stated on this subject was that further evaluation would be necessary and that she "would guess there may be a problem there." (C.R.13.) Thus, this case is distinguishable from Ex parte Gordon, 556 So.2d 363 (Ala.1988), cited by the majority in support of its decision to reverse the trial court. In Ex parte Gordon, three attorneys who had previously represented the defendant testified that she had been unable to assist them in the preparation of her defense. Based on this testimony, the Alabama Supreme Court held that the evidence warranted further inquiry into the defendant's mental competence. No such testimony was presented in this case. Thus, I do not agree with the majority that the evidence here "is even more compelling" than the evidence presented in Ex parte Gordon.
As for the majority's reliance on Ake v. Oklahoma, supra, as an additional reason to reverse, this Court has stated:
"A criminal defendant does not have a right to a mental examination merely because he requests one. Blevins v. State, 516 So.2d 914, 915 (Ala.Cr.App.1987); Marlow v. State, 538 So.2d 804, 807 (Ala. Cr.App.1988). Nor does the fact that an accused is indigent automatically entitle him to a free psychiatric evaluation. Nelson v. State, 405 So.2d 392, 394 (Ala.Cr.App.1980), reversed on other grounds, 405 So.2d 401 (Ala.1981); Bailey v. State, 421 So.2d 1364, 1367 (Ala.Cr.App.1982). An indigent defendant will be entitled to state funded psychiatric assistance only after he has made a preliminary showing that his sanity at the time of the offense is questionable. Holmes v. State, 497 So.2d 1149, 1151 (Ala.Cr.App.1986); Sabiar v. State, 526 So.2d 661, 663 (Ala.Cr.App.1988)."
Stewart v. State, 562 So.2d 1365 (Ala.Cr.App. 1989) (emphasis added.)
The evidence presented at the appellant's hearing did not address any of the critical questions before the trial courtwhether the appellant had the present ability to consult *873 with his attorney, whether he understood the proceeding against him, and whether he was sane when he committed the offense. The majority reasons that evidence that the appellant exhibited psychotic behavior some months before committing the present offense was sufficient to warrant further inquiry. However, there was no testimony as to whether this "condition" would have affected the appellant's ability to consult with his attorney or to understand the proceedings against him or whether it would have affected his ability to understand the wrongfulness of his acts at the time the offense was committed. Given the fact that the appellant had been determined competent to stand trial on two prior offenses in 1988 and 1989, testimony concerning the appellant's mental state at the time of the now charged offense was essential. Although the appellant need not have proven at the motion hearing the ultimate issue of his sanity at the time of the offense or his mental competency, he was required to present some evidence that would have warranted further inquiry into his mental state. I fail to see how Dr. Keown's equivocal statements provided this evidence. In my opinion, the appellant failed to meet his burden of persuasion on this matter. Accordingly, I would hold that the trial court did not abuse its discretion in denying the appellant's motion seeking a mental evaluation.
NOTES
[1] I recognize, as the majority notes, that Bailey was decided before the United States Supreme Court's decision in Ake v. Oklahoma, supra. However, this Court's reasoning in Bailey continues to be useful in examining a defendant's competency to stand trial and in reviewing a trial court's decision to grant or deny a request for a mental examination. Moreover, in Ex parte Gordon, 556 So.2d 363 (Ala.1988), a case upon which the majority relies in reversing the judgment in this case, the Alabama Supreme Court cites Bailey.